UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GREGORY T. BROWN, JR. ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CIVIL ACTION |
| ) | NO. 11-11019-JGD |
| COMMONWEALTH OF ) | |
| MASSACHUSETTS, et al., ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OF DECISION AND ORDER
### ON DEFENDANTS' MOTION TO DISMISS

February 21, 2012

DEIN, U.S.M.J.

## I. INTRODUCTION

The plaintiff, Gregory T. Brown, Jr., ("Brown"), is a former inmate who was incarcerated at the Essex County Corrections Facility (a/k/a Middleton House of Corrections) in Middleton, Massachusetts. He has brought this action pursuant to 42 U.S.C. § 1983 and the Massachusetts Torts Claims Act ("MTCA"), Mass. Gen. Laws ch. 258, alleging that prison officials and corrections officers at the Facility violated his constitutional rights and were negligent by knowingly placing Brown with a violent and mentally ill cellmate, Nathaniel A. Kargbo ("Kargbo"), and refusing to move Brown out of the cell despite repeated protests.[1] Brown has named as defendants the Common-

---

[1] Brown has also brought an assault and battery claim against Kargbo (Count IV). However, Kargbo apparently has not been served in this action, and the claim against him is not the subject of the pending motion to dismiss.

wealth of Massachusetts ("Commonwealth"); Frank G. Cousins, Jr. ("Sheriff Cousins") who is the Sheriff of Essex County; Michael Marks ("Superintendent Marks") who is the Superintendent of the Facility; three correctional officers: Frank L. Waterman ("Waterman"), Kevin G. Clark ("Clark"), and Jordon Corriea ("Corriea"); and other currently unidentified John Doe employees of the Sheriff's Department (collectively, the "Essex defendants"); and his alleged assailant, Kargbo. The Essex defendants are sued individually and in their official capacities. Brown is seeking compensatory and punitive damages, and attorneys' fees.

This matter is presently before the court on the "Commonwealth of Massachusetts' Motion to Dismiss" (Docket No. 13), by which the Commonwealth is seeking dismissal of Brown's claims against the Commonwealth and the Essex defendants for Brown's failure to state a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6). During a hearing on the motion on September 22, 2011, the plaintiff dismissed the MTCA claims against the Commonwealth and the Essex defendants (Count III). For its part, the Commonwealth clarified that its motion to dismiss was now limited to the 42 U.S.C. § 1983 claims raised in Count II of the Complaint against Sheriff Cousins in his official capacity. In particular, the Commonwealth argues that the Section 1983 claims against the Sheriff in his official capacity must be dismissed as the government of Essex County was abolished in 1999, and the Sheriff is now an employee of the Commonwealth and immune from liability in federal court pursuant to the Eleventh Amendment. For his part, the plaintiff contends that "Sheriff Cousins, although nominally an employee of the Commonwealth,

possesses the power to make official policy concerning administration of the Essex County Correction Facility" and, therefore, the suit against him in his official capacity should not be considered a suit against the Commonwealth. (See Pl. Supp. Mem. (Docket No. 19) at 1-2.) In addition, the plaintiff contends that it would constitute a denial of his equal protection rights to allow Sheriff Cousins to assert a defense of sovereign immunity, while a sheriff in another county would not be immune from suit. (Id. at 3.)

For the reasons detailed herein, this court finds that the Essex County Sheriff's Department is a state agency. Therefore, the motion to dismiss is allowed to the extent that it (1) seeks to dismiss Count III, and (2) seeks to dismiss the Count II claims against the Sheriff in his official capacity. The motion to dismiss is otherwise denied.

## II. **STATEMENT OF FACTS**

When ruling on a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), the court must accept as true all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences. See Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999). "Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). "There is, however, a narrow exception 'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff['s] claim; or

for documents sufficiently referred to in the complaint.'" Id.[2] Applying these standards to the present case, and recognizing that the facts of the underlying dispute are not critical to the issues raised by the pending motion to dismiss, the background facts are as follows.

### **Complaints Prior to the Alleged Assault**

Brown was incarcerated at the Middleton Facility where he was serving his sentence on a larceny charge and probation violation from April 16, 2009 until on or about April 21, 2010. (Compl. (Docket No. 1) ¶¶ 7, 9). Brown claims that he was transferred in or about March 2010 to the special management or "120A" unit from the "protective custody" unit of the prison, awaiting his reclassification to another less restrictive unit in preparation for his upcoming release. (Id. ¶¶ 8-9). Inmates in the 120A unit are segregated from the general prison population and confined to a cell for twenty-three hours a day. (Id. ¶ 8). Brown contends that he did not have a cellmate when he was first transferred into the 120A unit. (Id. ¶ 10).

On or about March 16, 2010, prison officials transferred Kargbo, who was allegedly notorious among the inmates and corrections officers for violent and erratic behavior, into Brown's cell. (Id. ¶¶ 11-12). The defendants Waterman, Clark and Corriea, were corrections officers ("CO") assigned to the unit at all times relevant to the facts alleged. (Id. ¶ 13). Brown alleges that he repeatedly complained, during the one

---

[2] Consistent with this standard, this court has considered, to the extent relevant, the documents attached as Exhibit A to Brown's Complaint and Demand for Jury Trial (Docket No. 1), as well as the documents attached as Exhibit 1 to Brown's Supplemental Memorandum of Law (Docket No. 19).

hour per day he was allowed out of his cell, to the COs on duty that Kargbo was going to assault him and that Kargbo's behavior was becoming increasingly paranoid and erratic. (Id. ¶ 14).

Brown contends that the COs refused Brown's pleas to be moved to another cell even though there were several empty cells in the unit at that time. (Id. ¶¶ 15-16). Allegedly, the COs responded that it was the policy and practice of prison officials not to separate cellmates "unless there was blood," which Brown interprets as meaning until after an attack has already occurred. (Id. ¶ 16). According to Brown, on the night of the alleged attack, he again pleaded to the COs to move him to another cell because Kargbo had threatened to attack him after "light out." (Id. ¶ 17).

## The Alleged Assault

Subsequently, the alleged assault took place after "light out" on March 24, 2010. (Id. ¶ 18). According to Brown, Kargbo beat him about the head and face claiming that Brown had been "telling on him" and that Kargbo could not believe that Brown would "do that to him on his birthday." (Id. ¶¶ 18-19). Attempting to conceal the attack, Kargbo reportedly commanded Brown to clean his own blood from the floor and walls of the cell and to hide his injuries during headcount. (Id. ¶ 20). Brown claims that he first complied with Kargbo's threat, but eventually yelled out for help in fear of his life. (Id.).

Following the alleged attack and upon his report, on March 24, 2010, Brown was transported to the prison infirmary and then to Beverly Hospital in Beverly, Massachusetts. (See Compl. ¶ 21; Def. Ans.¶ 21). According to Brown, testings at Beverly

Hospital revealed that he had suffered a left orbital floor "blowout" fracture, sinus and jaw fractures, damage to the muscles in his face, and two broken teeth. (Compl. ¶ 22). On or about April 6, 2010, Brown was reportedly transferred to the Beth Israel Hospital in Boston, Massachusetts, where the surgeon at the hospital attached metal plates to his skull to fix the fractured bones and attempted to repair the facial muscles with an alloplastic graft. (Id. ¶ 23). Brown contends that he may require additional surgery to repair his facial muscles, and may have permanent vision and hearing loss as a result of his injuries. (Id. ¶ 24). Brown further claims that he has personally incurred substantial medical bills that are now in collection. (Id. ¶ 25). Brown was released from the prison early about one month after the attack. (Id. ¶ 28).

## Facts Relating to the Sheriff's Department

In his Complaint, Brown alleges only that "Sheriff Cousins was the head of the Essex County Sheriff's Office, which operates the Essex County Corrections Facility a/k/a Middleton House of Correction ("prison") in Middleton, Massachusetts." (Compl. ¶ 2). It is undisputed, however, that Essex and seven other counties were dissolved as separate legal entities in or about 1999. Mass. Gen. Laws ch. 34B, § 1; Cape Cod Times v. Sheriff of Barnstable Cnty., 443 Mass. 587, 588 n.4, 823 N.E.2d 375, 378 n.4 (2005). Thus, while "[f]or most of the Commonwealth's history, sheriffs have been employees of their respective counties[,]" since the enactment of Mass. Gen. Laws ch. 34B in 1999 which abolished various county governments, sheriffs of those counties have been employees of the Commonwealth. Id.; see Mass. Gen. Laws ch. 34B, § 12.

Nevertheless, the sheriffs of abolished counties "retain administrative and operational control over the office of the sheriff, the jail, and the house of correction," including, but not limited to, responsibility for "the procurement of supplies, services and equipment." Mass. Gen. Laws ch. 34B, § 12. At issue is whether the Sheriff of Essex County is immune from suit under such circumstances.

### III. ANALYSIS

"As a general matter, states are immune under the Eleventh Amendment from private suit in federal courts, absent their consent. This immunity extends to any entity that is an arm of the state." Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 99 (1st Cir. 2002) (internal quotations and citations omitted). See also P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144, 113 S. Ct. 684, 121 L. Ed. 2d 605 (1993) ("Absent waiver, neither a State nor agencies acting under its control may 'be subject to suit in federal court.'") (quoting Welch v. Tex. Dep't of Highways & Pub. Transp., 483 U.S. 468, 480, 107 S. Ct. 2941, 2949-50, 97 L. Ed. 2d 389 (1987)). Moreover, it is well established "that neither a State nor its officers in their representative capacities are persons within the meaning of 42 U.S.C. § 1983 with respect to actions for damages." Roasario-Urdaz v. Rivera-Hernandez, 350 F.3d 219, 222 (1st Cir. 2003). Therefore, if the Essex County Sheriff's Department is a state agency, the claims against Sheriff Cousins must be dismissed.

The courts that have addressed the issue in this jurisdiction have concluded that the Sheriff's Departments of abolished counties are "arms of the state entitled to

sovereign immunity." Gallo v. Essex Cnty. Sheriff's Dep't, No. 10-10260-DPW, 2011 WL 1155385, at *3 (D. Mass. Mar. 24, 2011) (citing Adams v. Cousins, No. 06-40117-FDS, 2009 WL 1873584, at *6 (D. Mass. Mar. 31, 2009) ("claims against the Essex County Sheriff's Department are barred by the Eleventh Amendment"), Christoforo v. Lupo, No. 03-12307-RGS, 2005 WL 3037076, at *3 n.3 (D. Mass. Nov. 14, 2005) ("Cousins argues persuasively that to the extent the Complaint seeks to name him in his official capacity, the claim for damages is one against the Commonwealth and is therefore precluded by the Eleventh Amendment's Sovereign Immunity Clause"), Kelley v. DiPaola, 379 F. Supp.2d 96, 100 (D. Mass. 2005) (suits against Sheriff of Middlesex County and other Sheriff Department employees dismissed as Middlesex County was abolished, the Sheriff's Office became a state agency, and suit is barred)). Brown has not put forth any arguments which would cause this court to depart from this conclusion.

As the Gallo court discussed in detail, which arguments will not be repeated here, it is "plain to see" that the 1999 Act abolishing various county governments "structured the [Essex County] Sheriff's Department to share in the Commonwealth's sovereign immunity." Gallo, 2011 WL 1155385, at *3. Not only does the language of the 1999 Act lead to that conclusion, but the fact that the "administration of a public safety entity is a core governmental function" also "points toward the conclusion that the Department is an arm of the Commonwealth." Id. Moreover, the fact that the payment of any judgment against the Sheriff's Department would be made by the Commonwealth, and "the prevention of federal-court judgments that must be paid out of a State's treasury was the

impetus for the Eleventh Amendment" "also lends support to the finding that the Department is structured to be an arm of the state." Id. at *4 (internal punctuation and citations omitted). Finally, the Gallo court rejected the arguments raised by Brown here. As the Gallo court held:

> Plaintiffs argue that the Commonwealth lacks significant control over the Department ... [citing] the Sheriff's status as an elected official, his power of appointment and discipline over employees, his retention of administrative and operational control, his authority to contract with third parties and bargain with employees over their working conditions, and his ability to generate revenue by serving civil process. To be sure, the Sheriff enjoys some independence in carrying out the Department's mandate, but the features of that independence identified by the Plaintiffs do not necessarily lead to the conclusion that the Department is excluded from the Commonwealth's sovereign immunity .... Ultimately, however, Plaintiffs fail to demonstrate that the Commonwealth exerts any less control over the Sheriff's Department than it does over other state agencies that are manifestly arms-of-the-state.

Id. (internal citations omitted). See also McMillian v. Munroe Cnty., Ala., 520 U.S. 781, 784-85, 117 S. Ct. 1734, 1736, 138 L. Ed. 2d 1 (1997) (cited by Brown) (Sheriff, who had "final policymaking authority in the area of law enforcement" was policymaker for the state and not the county when he acted in a law enforcement capacity; therefore he was immune from § 1983 liability in wrongful conviction case).

Nor does this court see any merit to Brown's equal protection argument. The issue is not, as Brown frames it, whether "a sheriff in one county is immune from civil rights lawsuits in federal court while a sheriff in another county is not." (Pl. Supp. Mem. at 3). Rather, the issue is whether municipalities and other local government units can be held

liable under § 1983, while the Commonwealth itself is immune from such liability. However, as the Supreme Court recognized in Monell v. NY Dep't of Soc. Servs., 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), relied on by Brown, "[t]here is certainly no constitutional impediment to municipal liability. . . . Nor is there any basis for concluding that the Eleventh Amendment is a bar to municipal liability." Id. at 691 n.54, 98 S. Ct. at 2036 n.54. Brown is not suggesting that the Commonwealth was obligated to abolish all county governments when it enacted Mass. Gen. Laws ch. 34B. Nor is Brown contending that there is anything unconstitutional in different prison facilities being owned and operated by different entities. Thus, the equal protection clause does not preclude the Essex Sheriff's Department from being a state agency.

Brown's § 1983 claim against Sheriff Cousins acting in his official capacity "represent[s] only another way of pleading an action against an entity of which an [official] is an agent." See Kentucky v. Graham, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105, 87 L. Ed. 3d 114 (1985) (quoting Monell, 436 U.S. at 690 n.55, 98 S. Ct. at 2035 n.55). Consequently, it is not only barred by the Eleventh Amendment, see id., but fails to state a Section 1983 claim and must be dismissed. See also Broner v. Flynn, 311 F. Supp. 2d 227, 233 (D. Mass. 2004) (since Worcester County was abolished, suit against the Sheriff of Worcester County "in his official capacity is deemed to be a suit against the Commonwealth. Since a state is not a 'person' for purposes of Section 1983, all claims against Sheriff Flynn in his official capacity are barred").

## IV. CONCLUSION

For the reasons detailed herein, this court finds that the Essex County Sheriff's Department is a state agency. Therefore, the motion to dismiss is allowed to the extent that it (1) seeks to dismiss Count III, and (2) seeks to dismiss the Count II claims against the Sheriff in his official capacity. The motion to dismiss is otherwise denied.

                                              / s / Judith Gail Dein
                                              Judith Gail Dein
                                              United States Magistrate Judge