UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GREGORY T. BROWN, JR. | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 11-11019-JGD |
| COMMONWEALTH OF | ) | |
| MASSACHUSETTS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM OF DECISION AND ORDER
# ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

May 30, 2013

DEIN, U.S.M.J.

## I. INTRODUCTION

The plaintiff, Gregory T. Brown, Jr., ("Brown"), was formerly incarcerated at the Essex County Corrections Facility ("ECCF") in Middleton, Massachusetts. He claims that on March 24, 2010, while he was housed in the special management unit at ECCF, he was viciously attacked and beaten by his cellmate, Nathaniel A. Kargbo ("Kargbo"). On June 7, 2011, Brown brought this action pursuant to 42 U.S.C. § 1983 ("Section 1983") and the Massachusetts Tort Claims Act, Mass. Gen. Laws ch. 258 ("MTCA"), claiming that various prison officials and corrections officers at ECCF deprived him of his constitutional and state law rights by knowingly placing him in a cell with a violent and mentally ill cellmate, and refusing to move Brown out of the cell despite his repeated

requests to do so.[1] In his complaint, Brown named as defendants the Commonwealth of Massachusetts ("Commonwealth"); the Sheriff of Essex County, Frank G. Cousins, Jr. ("Sheriff Cousins"); the Superintendent of ECCF, Michael Marks ("Marks"); correctional officers Frank L. Waterman ("Waterman"), Kevin G. Clark ("Clark"), and Jordon Corriea ("Corriea"); unidentified John Doe employees of the Essex Sheriff's Department (collectively, the "Essex defendants"); and Brown's alleged assailant, Kargbo. Each of the individual Essex defendants was sued both individually and in his official capacity.

On February 21, 2012, this court dismissed Brown's claims against the Commonwealth and the Essex defendants under the MTCA, as well as Brown's Section 1983 claim against Sheriff Cousins in his official capacity. (See Docket No. 20). Therefore, the claims that remain consist of Brown's Section 1983 claims against Waterman, Clark, Corriea, Marks, and the John Does in both their official and individual capacities, and Brown's Section 1983 claim against Sheriff Cousins in his individual capacity.

The matter is presently before the court on "Defendants Cousins, Marks, Waterman, Clark and Corriea's Motion for Summary Judgment Pursuant to F.R.C.P. 56(C)" (Docket No. 38), by which the Essex defendants are seeking summary judgment in their favor on each of Brown's remaining claims against them. For all the reasons detailed herein, the motion is ALLOWED IN PART and DENIED IN PART. During oral

---

[1] Brown also brought a claim for assault and battery against Kargbo (Count IV). However, Kargbo apparently has never been served with process.

argument, the plaintiff agreed to dismiss his claim against Sheriff Cousins, as well as his official capacity claims against Marks, Waterman, Clark and Corriea.  Accordingly, this court will enter judgment in favor of the defendants on those claims and will not address them further.  With respect to the remaining claims, this court finds that there are disputed issues of fact as to whether Waterman, Clark and Corriea violated Brown's constitutional rights under Section 1983 by acting with deliberate indifference to the plaintiff's health and safety.  Therefore, the defendants' motion for summary judgment on those claims is denied.  However, because the plaintiff has not presented sufficient facts to support his Section 1983 claim against Marks, the motion for summary judgment is allowed with respect to that defendant.

## II.  DISCUSSION

### A.   Summary Judgment Standard of Review

Summary judgment is appropriate when the moving party shows, based on the discovery and disclosure materials on file, and any affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'"  Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)).  "A fact is material only if it possesses the capacity to sway the outcome of the litigation under the applicable law."  Id. (quotations, punctuation and citations omitted).

The moving party bears the initial burden of establishing that there is no genuine issue of material fact. See Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010). If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). Accordingly, "the nonmoving party 'may not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts showing that there is a genuine issue for trial. Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)). The court must view the record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. See Vineberg, 548 F.3d at 56. "If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate." Walsh v. Town of Lakeville, 431 F. Supp. 2d 134, 143 (D. Mass. 2006).

**B.   Exhaustion**

The Essex defendants contend, as an initial matter, that they are entitled to summary judgment on all of Brown's remaining claims because the plaintiff failed to exhaust his administrative remedies, as required under the Prison Litigation Reform Act ("PLRA"). (Def. Mem. (Docket No. 39) at 4-5). It is undisputed that Brown never filed a grievance concerning his placement in a cell with Kargbo or the defendants' failure to

remove Kargbo from his cell. (See Def. Ex. A at 35-36).[2] However, this court finds that there are disputed issues of fact as to whether the defendants' alleged failure to comply with Brown's requests for a cell change were grievable under ECCF's internal grievance policy. Therefore, the defendants have not established that they are entitled to summary judgment on this basis.

The exhaustion provision of the PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Thus, as a general matter, the PLRA "requires prisoners to exhaust prison grievance procedures before filing suit." Jones v. Bock, 549 U.S. 199, 202, 127 S. Ct. 910, 914, 166 L. Ed. 2d 798 (2007). Nevertheless, the statute "does not require exhaustion of *all* remedies; it requires the exhaustion of 'such administrative remedies as are available.'" Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001). If a matter is not grievable under the prison's

---

[2] The evidence cited to herein is derived from the following materials: (1) the exhibits attached to the Memorandum of Law in Support of Defendants' Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56(c) ("Def. Ex. __") (Docket No. 39); (2) the defendants' Statement of Material Facts Pursuant to Local Rule 56.1 ("DF") (Docket No. 40); (3) the Plaintiff's Statement of Material Facts Pursuant to Local Rule 56.1 ("PF") (Docket No. 45) (4) the Plaintiff's Response to Defendants' Statement of Material Facts Pursuant to Local Rule 56.1 ("PR") (Docket No. 47); (5) the exhibits attached to the Affidavit of John R. Bita III, in Opposition to Defendants' Motion for Summary Judgment ("Pl. Ex. __") (Docket No. 48); and (6) the exhibits attached to the Reply Brief of Defendants Frank G. Cousins, Michael Marks, Frank Waterman, Kevin Clark and Jordan Correia to Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Def. Supp. Ex. __") (Docket No. 51).

grievance policy, there is no administrative remedy available to exhaust. <u>Shaheed-Muhammad v. DiPaolo</u>, 393 F. Supp. 2d 80, 102-03 (D. Mass. 2005) (denying defendant's motion for summary judgment based on failure to exhaust administrative remedies where the plaintiff's challenge to the defendants' conduct involved a non-grievable matter).

The record in the instant case contains evidence indicating that the defendants' failure to honor Brown's requests for a cell reassignment was not a grievable matter under ECCF's internal grievance policy. For example, during his deposition, Marks testified that a request by an inmate to move his cell, like a request to take a shower or use the phone, would not be considered a grievance. (Pl. Ex. B at 42). Additionally, Waterman testified, during his deposition, that an inmate requesting a cell reassignment would be expected to verbalize his request rather than fill out a inmate request form pursuant to the facility's grievance procedure. (<u>See</u> Pl. Ex. C at 23-25). As Waterman explained in his testimony, a cell reassignment is a matter that would be handled by the officers on the floor and would not require a more formal, written form. (<u>Id.</u> at 24-25). He further stated that to the best of his knowledge, there are no forms that are used for cell changes at ECCF. (<u>Id.</u> at 25).

Clarke's deposition testimony regarding the procedures for handling inmate requests for a cell change was consistent with the testimony of Waterman. Specifically, Clark testified that inmates seeking to change cells would raise the issue verbally with a

correctional officer rather than on a written form. (Def. Supp. Ex. B at 53-54). He also stated that there was no grievance procedure available for inmates seeking to be moved to another cell within the protective custody unit where Brown was housed, and he denied that he had ever given an inmate a written form to use in connection with a request for a cell assignment. (Id. at 55). When viewed in the light most favorable to the plaintiff, the defendants' own testimony raises an issue of fact as to whether Brown's complaints about his cell assignment, and the defendants refusal to move him, were grievable. Therefore, this court concludes that the question of exhaustion cannot be resolved on summary judgment. See Maraglia v. Maloney, Civil Action No. 2001-12144-RBC, 2006 WL 3741927, at *2-3 (D. Mass. Dec. 18, 2006) (denying defendants' motions for summary judgment where questions remained regarding availability of prison grievance procedures).

The defendants argue that their testimony should not be read to suggest that there was no grievance procedure available to accommodate Brown's request for a cell reassignment. (Def. Reply Mem. (Docket No. 51) at 1). Rather, they contend that they were merely explaining the difference between a request form, which is used as part of ECCF's informal grievance process, and a grievance form, which is used after all efforts to resolve an inmate's complaint through the informal resolution process has been exhausted. (See id. at 1-5; Pl. Ex. J §§ 934.06-934.07). Although the testimony at issue is not free of ambiguity and could arguably be read to support the defendants' position, on

summary judgment, the record must be viewed in favor of the non-moving party. See Vineberg, 548 F.3d at 56.  As described above, this court finds that when the defendants' testimony is viewed in the light most favorable to Brown, it supports an inference that requests for a cell change were handled orally by officers in the unit, and were not subject to the facility's formal or informal grievance procedures.  Therefore, the defendants are not entitled to summary judgment based on Brown's failure to exhaust his administrative remedies.

### C. Claims Against Correctional Officers for Deliberate Indifference

In Count I of his complaint, Brown claims that Waterman, Clark and Corriea deprived him of his rights under the Eighth and Fourteenth Amendments to the Constitution.  Specifically, Brown alleges that the correctional officers' refusal to remove Brown from the cell he shared with Kargbo constituted deliberate indifference toward a substantial risk to the plaintiff's health and safety.  The defendants argue that they are entitled to summary judgment on these claims because there is no evidence showing that Kargbo presented a substantial risk of harm to the plaintiff, or that the defendants were deliberately indifferent to the plaintiff's health or safety. (Def. Mem. at 7-10).  Because this court finds that the material facts regarding these claims are in dispute, the defendants' motion for summary judgment is denied with respect to Count I of the complaint.

### Elements of a Claim for Deliberate Indifference

Prison officials have a duty under the Eighth Amendment "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811 (1994) (quotations and citations omitted). Accordingly, "[p]rison officials must take reasonable measures to guarantee inmates' safety from attacks by other inmates." Calderon-Ortiz v. Laboy-Alvarado, 300 F. 3d 60, 64 (1st Cir. 2001). On the other hand, "not every injury a prisoner suffers at the hands of another prisoner is actionable." Id. As the Supreme Court ruled in Farmer, "a prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious[.]" Farmer, 511 U.S. at 834, 114 S. Ct. at 1977 (quotations and citations omitted). "For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Id. Second, the plaintiff must show that the defendant acted with "deliberate indifference" to his health or safety. Id.

"While deliberate indifference entails something more than mere negligence, 'it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" Calderon-Ortiz, 300 F.3d at 64 (quoting Farmer, 511 U.S. at 835, 114 S. Ct. at 1978). Thus,

> [a] prison official may be liable under the Eighth Amendment for acting with deliberate indifference to inmate health or safety only if the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which

> the inference could be drawn that a substantial risk of serious harm
> exists, and he must also draw the inference."

Id. (quoting Farmer, 511 U.S. at 837, 114 S. Ct. at 1979). Therefore, "under the second requirement of *Farmer*, [the plaintiff] must show: (1) the defendants knew of (2) a substantial risk (3) of serious harm and (4) disregarded that risk." Id.

### Evidence of Deliberate Indifference

In the instant matter, Brown has presented sufficient evidence to support his claims for deliberate indifference against Waterman, Clark and Corriea. With respect to the first requirement of the test set forth in Farmer, the record contains evidence showing that the conditions under which Brown was housed created a serious risk of harm to the plaintiff. It is undisputed that Brown is in his mid-30s, has a slight build, is 5'10" in height, and weighs only 150 pounds. (PF ¶ 7). Moreover, Brown has presented evidence indicating that he had a history of being threatened by other inmates during his incarceration at ECCF. For example, the evidence shows that in October 2008, Brown reported that he did not feel safe during recreation time. (Id. ¶ 6). Consequently, Brown was placed on protective custody ("PC") status and transferred to segregation. (Id. ¶ 6). On another occasion, in May 2009, Brown was found in the bathroom of his housing unit holding a bloody towel to his eye. (Id. ¶ 5; Pl. Ex. E at 3). An investigation into the incident revealed that Brown had been punched in the face by a fellow inmate. (Pl. Ex. E at 2). Subsequently, in January 2010, Brown was placed on PC status and transferred to segregation after he complained to a correctional officer that he was in fear for his life.

(Id. at 1). Brown was still living in segregation on March 16, 2010, when he and Kargbo were put in a cell together. (See DF ¶ 3; PR ¶ 3).

The record shows that, in contrast to Brown, Kargbo is a larger individual who had a history of violence at ECCF. Specifically, the evidence shows that Kargbo is 6'2" tall, has a medium build, and weighs 180 pounds. (PF ¶ 10). In addition, the plaintiff has presented evidence showing that Kargbo engaged in fights with each of the four cellmates with whom he was housed prior to sharing a cell with the plaintiff. (PF ¶ 11; Pl. Ex. G at 29). In fact, it is undisputed that Kargbo was transferred to segregation at the request of other inmates, in order to relieve the tension that Kargbo's presence was causing in his housing unit. (PF ¶ 17; Pl. Ex. B at 21-23).

The record also contains evidence indicating that Kargbo exhibited signs of mental instability. For example, there is evidence that Kargbo experienced mood swings and engaged in erratic behavior such as talking to himself and sleeping with the water on all night. (PF ¶ 14; Pl. Ex. G at 32). Additionally, Clark testified that Kargbo was "different" and had became "more and more crazy" over the course of his incarceration at ECCF. (Pl. Ex. A at 36-37). He further stated that Kargbo made threatening statements to correctional officers and fellow inmates, such as "I will fuck you up." (Id. at 40-41). Based on this evidence, a jury could reasonably conclude that Kargbo posed a threat to other inmates at the facility. A jury also could find that the decision to house a violent inmate like Kargbo in the same cell as a victimized inmate like Brown created a

substantial risk of serious physical harm to the plaintiff.

With respect to the second requirement of the <u>Farmer</u> test, this court finds that there is evidence showing that the defendants were aware of the risk of harm to Brown but that they chose to disregard it. In addition to Clark's acknowledgment that Kargbo was crazy and had been known to make threats, Brown testified that when he was first moved into the cell with Kargbo, Waterman informed Brown that Kargbo was a problem and that he "liked to fight." (Pl. Ex. G at 28-29). Brown also testified that he approached the defendants on a daily basis and told the officers that he felt unsafe and wanted to be moved away from Kargbo. (<u>Id.</u> at 30, 33). In particular, Brown claims he informed the officers that Kargbo was talking to himself and threatening people. (<u>Id.</u> at 33). He also claims he told the defendants that Kargbo's behavior made him nervous, and that he wanted to get out of the cell. (<u>Id.</u>). However, the defendants failed to separate Brown from Kargbo or to take any other measures to protect the plaintiff from harm. (<u>See</u> DF ¶ 5; PF ¶¶ 23-24).

The defendants nevertheless contend that the record is void of evidence showing that the correctional officers knew or should have known that Kargbo posed a direct threat to the plaintiff. (Def. Mem. at 9). In particular, the defendants cite to testimony from Clark and Waterman regarding a conversation they had with the plaintiff on the day of Kargbo's attack. According to the officers, during the conversation Brown complained that Kargbo was strange and he asked to be moved to another cell. (<u>See</u> Def. Ex. C at 45-

46; Def. Ex. D. at 16-17). However, when the officers asked Brown if he was in fear for his safety, Brown denied that he had any such concern. (Def. Ex. C at 47; Def. Ex. D at 16-17). Thus, although the defendants do not dispute that Kargbo was strange and exhibited signs of mental instability, they contend that the officers had no reason to know that Kargbo presented a foreseeable risk of harm to the plaintiff. (See Def. Mem. at 10; Def. Reply Mem. at 5).

While the facts on which the defendants rely may support their contention that they did not ignore a known risk to Brown's safety, those facts are contradicted by Brown's account of his conversations with the defendants. As described above, Brown testified that he repeatedly complained to the defendants that he felt unsafe with Kargbo, that Kargbo made him nervous, and that he wanted to be moved to another cell. (Pl. Ex. G at 30, 33). Furthermore, Brown testified that on the day of the alleged attack, he spent an entire hour speaking to Waterman and Clark and asking to have his cell changed. (Id. at 38). When Corriea joined the other officers, Brown repeated his request to Corriea. (Id.). According to the plaintiff, Corriea stated that Brown would not be moved "unless we see blood." (Id. at 38-39). It is undisputed that later that day, Kargbo attacked Brown and caused him to suffer serious injuries to his face. (DF ¶¶ 9-10). Because these facts support Brown's claim that the officers were aware that Kargbo posed a significant threat to Brown's safety, but refused to take steps to protect Brown from harm, the defendants are not entitled to summary judgment on Count I of Brown's complaint.

**Qualified Immunity**

The defendants argue that even if the evidence supports the plaintiff's claim of deliberate indifference against Waterman, Clark and Corriea, the officers are entitled to protection from liability pursuant to the doctrine of qualified immunity. (Def. Mem. at 10-12). Again, this argument must fail because the relevant facts are in dispute.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson, 555 U.S. at 231, 129 S. Ct. at 815 (quotations and citations omitted).

The determination as to whether an official is entitled to qualified immunity requires an assessment as to whether the facts alleged or shown by the plaintiff "make out a violation of a constitutional right" and, if so, "whether the right at issue was clearly

established at the time of defendant's alleged misconduct." Id. at 232, 129 S. Ct. at 816 (quotations and citations omitted). "[T]he second, 'clearly established,' step of the qualified immunity analysis . . . in turn, has two aspects." Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009). As the First Circuit has described:

> One aspect of the analysis focuses on the clarity of the law at the time of the alleged civil rights violation. To overcome qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. The other aspect focuses more concretely on the facts of the particular case and whether a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights. Indeed, it is important to emphasize that this inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.

Id. (quotations, citations and alterations omitted). Thus, "the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. (quotations, citations and alterations omitted).

The defendants do not dispute that at the time of the alleged attack by Kargbo on March 24, 2010, it had long been established that under the Eighth Amendment, "[p]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer, 511 U.S. at 833, 114 S. Ct. at 1976 (punctuation in original; quotations and citations omitted). Nevertheless, they contend that in this case, "where Plaintiff was questioned by both Defendants Waterman and Clark whether he felt he was physically at risk by sharing a cell with Kargbo and denied same, no similarly situated

15

correction official would have understood that his actions in not separating Kargbo and the Plaintiff violated the Plaintiff's civil rights." (Def. Mem. at 12). Again, however, the defendants' argument is premised upon their own version of the facts, which are disputed. Based on the evidence presented by the plaintiff, including Brown's description of his conversations with the defendants and the defendants' alleged knowledge of Kargbo's violent and erratic behavior, a reasonable officer in the defendants' position would have understood that the failure to separate Brown and Kargbo violated a clearly established constitutional duty to protect Brown from violence at the hands of Kargbo. Therefore, the defendants have not shown that they are entitled to summary judgment on the grounds of qualified immunity.

### D.  Claim Against Superintendent Marks for Deliberate Indifference

In Count II of his complaint, Brown has asserted a claim against Marks, the Superintendent of ECCF, for deliberate indifference under the Eighth Amendment. The defendants contend that Marks is entitled to summary judgment on this claim because there is no evidence linking Marks to the events surrounding the alleged beating of Brown on March 24, 2010. (Def. Mem. at 8-9). For the reasons that follow, this court agrees that Brown has failed to present evidence in support of his claim against Marks. Therefore, Marks is entitled to judgment as a matter of law with respect to Count II of the complaint.

## Supervisory Liability

Under Section 1983, liability for supervisory officials such as Marks "cannot be predicated on a respondeat superior theory. Supervisors may only be held liable under § 1983 on the basis of their own acts or omissions." Whitfield v. Melendez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005) (internal citation omitted). As the First Circuit has explained,

> [i]n the context of Section 1983 actions, supervisory liability typically arises in one of two ways: either the supervisor may be a "primary violator or direct participant in the rights-violating incident," or liability may attach "if a responsible official supervises, trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation."

Sanchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir. 2009) (quoting Camilo-Robles v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999)). "In either case, the plaintiff in a Section 1983 action must show 'an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization,' . . . between the actor and the underlying violation." Id. (quoting Camilo-Robles, 175 F.3d at 44).

## Evidence Relating to Marks

In the instant case, Brown has failed to present facts linking Marks to any of the circumstances which resulted in Kargbo's attack on Brown. Brown does not contend that he spoke to Marks about his housing situation or that Marks was otherwise aware of Brown's concerns for his safety. Nor has he presented facts showing that Marks had any involvement in the decision to place Brown in a cell with Kargbo, or that Marks even

knew about Brown's placement during the relevant time period.  Therefore, Brown cannot establish that Marks had any direct participation in the decisions which led to the alleged violation of Brown's constitutional rights.

The plaintiff argues that even if Marks was not directly involved in the decision to house Brown in a cell with Kargbo, the defendant may be held liable because he was ultimately responsible for implementing the prison classification scheme which resulted in Brown becoming cellmates with his attacker.  (Pl. Opp. Mem. at 12-13).  Specifically, Brown contends that Kargbo was improperly classified to PC status, the same status that the plaintiff had when he was moved to segregation.  (See id. at 13).  Because prison policy allowed inmates to share a cell only if they had the same classification level, Brown reasons that the improper classification of Kargbo to PC status rather than disciplinary segregation or administrative segregation created the circumstances which eventually led to Kargbo's attack on the plaintiff.  (See id.; PF ¶ 2; Pl. Ex. B at 36-37).

Although the record confirms that Marks did have ultimate responsibility for the prison's classification scheme, Marks testified that at the time of the alleged attack on Brown, Marks had designated Carol Higgins as the person responsible for specific inmate classifications at ECCF.  (Pl. Ex. B at 12-13, 29).  Marks also testified that the decision to move an inmate from one unit to another within the facility would have been the responsibility of the Officer in Charge ("OIC").  (Id. at 35).  Therefore, according to Marks, he had no involvement in the decision to place Kargbo on PC status or in the

decision to transfer him to segregation.

Brown does not dispute that at the time of the alleged incident, Ms. Higgins had been given responsibility for inmate classification. Nor does he dispute that decisions to transfer inmates within the facility were made by an OIC. Nevertheless, he argues that "[e]ven if Marks was not directly involved in specific classification decisions, he still retains a supervisory function and he can incur § 1983 liability if his failure to supervise Assistant Superintendent Higgins manifested 'deliberate indifference.'" (Pl. Opp. Mem. at 13). However, the plaintiff has presented no evidence to support such a claim. As an initial matter, Brown has proffered no facts to support his argument that Kargbo's placement on PC status was improper under the prison's classification scheme. Nor has he presented any evidence to suggest that Marks improperly trained or supervised his staff.[3] In order to withstand summary judgment, it is necessary for the plaintiff to set forth specific facts showing that there is a genuine issue for trial. See LeBlanc, 6 F.3d at 841. Because Brown has failed to set forth any specific facts linking Marks to the alleged

---

[3] In his memorandum in opposition to the motion for summary judgment, Brown argued that the defendants' motion for summary judgment on his claim against Marks should be denied pursuant to Fed. R. Civ. P. 56(d) because the defendants failed to produce the incident reports describing the events which led to Kargbo's transfer to segregation, or the classification reports relating to the decision to place Kargbo on PC status. (Pl. Opp. Mem. at 13-14). The plaintiff asserted that without the classification reports, he could not determine "whether Assistant Superintendent Carol Higgins correctly applied the classification criteria, and whether her decision was supervised in any way by Superintendent Marks." (Id. at 13). However, not only did Brown fail to support his argument with an affidavit or declaration as required by Rule 56(d), but he also had the opportunity to explore Marks' role in inmate classification decisions through other means of discovery. (See, e.g., Pl. Ex. B at 12-13). Therefore, Brown has not shown that the defendants' motion for summary judgment should be denied on these grounds.

constitutional violation, Marks is entitled to summary judgment on Brown's claim against him under Section 1983.

### III.  CONCLUSION

For all the reasons detailed herein, the "Defendants Cousins, Marks, Waterman, Clark and Corriea's Motion for Summary Judgment Pursuant to F.R.C.P. 56(C)" is ALLOWED IN PART and DENIED IN PART.  Specifically, the motion is allowed with respect to Brown's claims against Sheriff Cousins and Superintendent Marks, and with respect to his official capacity claims against Waterman, Clark and Corriea.  However, the motion is denied with respect to Brown's claims for deliberate indifference against Waterman, Clark and Corriea acting in their individual capacities.

                                      / s / Judith Gail Dein
                                     Judith Gail Dein
                                     United States Magistrate Judge