UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GREGORY T. BROWN, JR.,                )
                                      )
            Plaintiff,                )
      v.                              )        CIVIL ACTION
                                      )        NO. 11-11019-JGD
FRANK L. WATERMAN, KEVIN G.           )
CLARK and JORDAN CORREIA,             )
                                      )
            Defendants.               )

## MEMORANDUM OF DECISION AND ORDER
## ON PLAINTIFF'S MOTION FOR A NEW TRIAL ON DAMAGES

September 27, 2013

DEIN, U.S.M.J.

## I.  INTRODUCTION

The plaintiff, Gregory T. Brown, Jr., ("Brown"), is a former inmate who was

incarcerated at the Essex County Corrections Facility (a/k/a Middleton House of

Corrections) in Middleton, Massachusetts.  He claimed that Frank L. Waterman, Kevin

G. Clark and Jordan Correia, corrections officers at the Facility, violated his Eighth

Amendment constitutional rights by acting with deliberate indifference to his physical

safety when they knowingly placed him with a violent and mentally ill cellmate,

Nathaniel A. Kargbo ("Kargbo"), and refused to move him out of the cell despite

repeated protests.[1]  A trial of this action was held before a jury beginning on August 5,

---

[1] Brown's other claims against these and other defendants were dismissed prior to trial in
connection with a motion to dismiss and motion for summary judgment.  (Docket Nos. 20 & 54).

2013.  On August 8, 2013, the jury returned answers to special questions, finding that each of the defendants had violated Brown's Eighth Amendment rights, and awarding Brown damages totaling Sixteen Thousand ($16,000.00) Dollars.

This matter is before the court on "Plaintiff's Motion for a New Trial Solely on the Issue of Damages."  (Docket No. 84).  The defendants have opposed the motion.  In the alternative, they have filed a cross-motion for a new trial, arguing that if the court orders a new trial, it should be both as to liability and damages.  (Docket No. 88).  After careful consideration of the evidence, pleadings and arguments of counsel, and recognizing the heavy burden the plaintiff bears, this court orders a new trial as to damages only.  This court finds that there is not "a sound evidentiary predicate" for the amount awarded, and that the jury award "violate[s] the conscience of the court" and "strike[s] such a dissonant chord that justice would be denied were the judgment permitted to stand."  Milone v. Moceri Family, Inc., 847 F.2d 35, 37 (1st Cir. 1988).

## II.  STATEMENT OF FACTS

Many of the facts were not in dispute at trial.  Briefly, Brown was incarcerated at the Middleton Facility where he was serving his sentence on a larceny charge and probation violation from April 16, 2009 until on or about April 21, 2010.  In March 2010, he was transferred to the segregation or "120A" unit of the prison.  Inmates in the 120A unit are segregated from the general prison population and confined to a cell for twenty-three hours a day.  The cells have 300 pound solid doors with only a small slit in the door at head height through which a guard can see inside.  Brown did not have a cellmate

when he was first transferred into the 120A unit.  However, on or about March 16, 2010, prison officials transferred Kargbo into Brown's cell.

The defendants, Waterman, Clark and Correia, were corrections officers ("COs") assigned to the unit at all relevant times.  Brown contends that he complained to them over the course of several days about Kargbo's increasingly erratic behavior, asked them to have him removed from the cell, and told the COs that he was very afraid that some-thing bad was going to happen.  Brown further testified that the defendant Correia told him that he would not be moved unless Correia "saw blood."  In contrast, the defendants testified that Brown did not tell them that he was in fear for his safety and that he simply requested a cell change — a common request from inmates which was not honored without grounds for the change.  The defendants' liability hinged on whose version of these conversations the jury accepted.  If the jury had accepted the defendants' testimony as to these conversations, it would have found in favor of the defendants.  In finding each of the defendants liable, the jury had to have accepted Brown's testimony and found him credible as to these conversations.

The facts surrounding Karbo's assault on Brown were undisputed at trial.  The assault took place after "lights out" on March 24, 2010.  According to Brown, when the two men were locked into their basically windowless cell, Kargbo beat him severely in the head and face claiming that Brown had been "telling on him" and that Kargbo could not believe that Brown would "do that to him on his birthday."  (It was, in fact, Kargbo's birthday.)  Brown testified that Kargbo knocked him unconscious, and that when he

regained consciousness, Kargbo was kicking him in the face.  Brown was bleeding profusely and his left eye was swollen shut.  As the beating was taking place, Brown offered to kill himself in an attempt to stop the attack.  Kargbo commanded Brown to clean his own blood from the floor and walls of the cell and to hide his injuries.  Brown tried to comply and mopped up some blood, but he soon felt a "pop" in the back of his throat, and blood gushed down the back of his throat and out of his nose.  Eventually a guard became aware of the beating and Brown was removed on a stretcher.  The photographs show extensive bruising.  (Ex. 36).

Brown was taken to the Beverly Hospital emergency room and then to Beth Israel Hospital for further evaluation and a surgical consultation.  He remained in Beth Israel overnight and then was returned to the Facility.  He could not undergo surgery until April 7, after the swelling had gone down.  On that day, Brown underwent surgery at Beth Israel hospital, which included (a) an alloplastic graft of a left orbital floor blowout fracture, (b) repair of a left cheekbone fracture using a titanium plate, and (c) repair of a right cheekbone fracture.  He also had to have two teeth removed.  Brown testified as to his medical treatment, and the surgeon testified by video deposition.  The defendants admitted that they were not contesting the injuries Brown sustained as a result of the beating.

The medical records were introduced into evidence, as were the medical expenses.  Brown's medical bills totaled $45,973.16.  There was no dispute that all of the medical

treatment and bills were as a result of the beating by Kargbo.  The defendants did not argue that the medical treatment was in any way unreasonable or unnecessary.

In addition to his testimony concerning the pain and fear he suffered during and after the attack,  Brown testified that he suffered from panic attacks for 3-4 months after the incident.  He also testified that his ability to work has been affected as he is a manual laborer and is no longer able to do heavy lifting because, when he does, it feels like his "eye is coming out of its socket."

There were no objections to the jury charge on the issue of damages, and this court does not find that there was any error in the charge.  In particular, but without limitation, this court instructed the jury:

> If you find that a defendant is liable to Mr. Brown, then you should award Mr. Brown a sum of money that you believe will fairly and justly compensate him for any injury that you believe he actually sustained as a result of the defendant's conduct.  These damages are called compensatory damages.  The purpose of the law in awarding these types of damages is to compensate an injured person for the losses that person has incurred.  The object, as best as money can accomplish it, is to restore the injured person to the position that he would have been in if the wrong had not occurred.  Compensatory damages are not limited to medical expenses or other expenses that the plaintiff may have incurred because of his injury.  If the plaintiff prevails, he is entitled to, in addition to his expenses, compensatory damages for the physical injury, pain and suffering, mental anguish, shock, and discomfort that he has suffered, and is reasonably certain to suffer in the future, because of the defendant's conduct.

During deliberations, the jury asked one question, which was "In regards to rewarding money to the plaintiff, do we have the option of awarding a certain percentage of the total amount depending on fault, or do we have to award 100% of that amount or

more?"  This court found the question confusing, as did counsel.  The court responded to

this question, after consultation with counsel, by, *inter alia*, repeating several instructions

on damages, reiterating that there was only to be one award of compensatory damages

even if the jury found multiple defendants liable, instructing the jury that if they awarded

medical expenses they were to award the amount they found reasonable, and reviewing

the factors which could be considered in assessing compensatory damages.  There was

some dialogue with the jurors in an attempt to clarify what, exactly, was being asked.

After review, this court finds no error in the instructions as given in response to the

question.  However, this court is still unclear as to the point of the question.

   In response to special questions, the jury found that each defendant had violated

Brown's Eighth Amendment rights and that such conduct was the proximate cause of the

plaintiff's injuries.  (Ques. 1-6).  The jury awarded Brown $16,000.00 in compensatory

damages plus pre-judgment interest.  (Ques. 7-8).  The jury did not award Brown punitive

damages.  (Ques. 9-14).

### III.  ANALYSIS

#### Damages

   Fed. R. Civ. P. 59(a)(1) allows the court to grant a new trial "on all or some of the

issues" to any party.  As the First Circuit has explained:

> Where, as here, an appellant contests the insufficiency or excessive-
> ness of a jury's award of damages in a personal injury case, he bears
> a particularly heavy burden.  As we have said: "Translating legal
> damage into money damages—especially in cases which involve
> few significant items of measurable economic loss—is a matter

peculiarly within a jury's ken." *Wagenmann [v. Adams,* 829 F.2d
196, 215 (1st Cir. 1987)]. For just this reason, "[w]e rarely will
override the jury's judgment on the appropriate amount of damages
to be awarded." *Brown v. Freedman Baking Co.,* 810 F.2d 6, 11 (1st
Cir. 1987). The jury, as we see it, is free to run the whole gamut of
euphonious notes—to harmonize the verdict at the highest or lowest
points for which there is a sound evidentiary predicate, or anywhere
in between—so long as the end result does not violate the conscience
of the court or strike such a dissonant chord that justice would be
denied were the judgment permitted to stand. *See Wagenmann,* 829
F.2d at 215; *Segal v. Gilbert Color Systems,* 746 F.2d 78, 80–81 (1st
Cir.1984); *McDonald v. Federal Laboratories,* 724 F.2d 243, 246
(1st Cir.1984). In other words, if—after scanning the evidence in
the light most congenial to the nonmovant, *Wagenmann,* 829 F.2d at
215—the verdict does not exceed or fall below "any rational
appraisal or estimate of the damages that could be based on the
evidence before the jury," *Segal,* 746 F.2d at 81 (citation omitted), it
should be validated.

Milone v. Moceri Family, Inc., 847 F.2d at 37-38.

In the instant case, while both sides have suggested possible rationales for the

verdict, it is undeniable that the amount awarded is not based on any easily discernable

calculation from the evidence presented.[2] This court will not attempt to guess what

motivated the damage award, except to say that it is not supported by the record. For

example, in the instant case it was undisputed that the medical treatment received was

appropriate, and there was no challenge to the reasonableness of the medical bills.

Nevertheless, the jury's award is approximately 1/3 of the medical expenses. This is not

---

[2] Based on the jury's question, this court would surmise that the jury was making some
sort of allocation, perhaps between the defendants - who are individuals - and non-parties, such as
the Commonwealth. However, since the jury's rationale is unknown, the decision to grant a new
trial is not based on any assumptions as to why the jury did what it did. Rather, this court is
relying on the fact that the evidence simply does not support the verdict.

a situation where the jury could have concluded that some of the medical treatment or expenses were not attributable to the beating by Kargbo so as to support a reduction in the amount of medical expenses awarded.  Nor is there any evidence from which the jury could find that the treatment or bills were not reasonable.  While this court recognizes that the jury can use its experience in evaluating the reasonableness of the medical bills, it cannot engage in a flight of fancy.[3]  Even viewing the record in the light most favorable to the defendants, there is simply no "evidentiary predicate" for the jury's award, which is significantly less than the amount of uncontested medical expenses.  The discrepancy becomes even greater if the plaintiff's valid claims for the pain and suffering he endured while being beaten behind the steel doors, and thereafter, are considered.

"An inadequate damages award may constitute sufficient reason for a new trial." Phav. v. Trueblood, Inc., 915 F.2d 764, 766 (1st Cir. 1990).  Here, the award "was a parsimonious award outside the universe of possible awards once the jury had found sufficient evidence to support liability."  Id. at 767 (internal quotations omitted).

---

[3]  For this reason, this court does not find persuasive defendants' argument that the jury could have parsed the medical expenses and only paid some of them for which they believed the plaintiff could be personally liable.  (See Docket No. 88 at 7).  As an initial matter, there was neither any evidence nor argument of counsel advising the jury to examine the medical bills and/or to divide up the medical expenses in any way.  Moreover, the jury should not have considered whether the medical expenses were being paid from another source, be it either the Commonwealth or insurance.  See Gill v. Maciejewski, 546 F.3d 557, 564 (8th Cir. 2008) (explaining that common law collateral source rule, which "holds that the defendant's liability shall not be reduced merely because the plaintiff's net damages are reduced from payments received from others[,] ... applies to § 1983 actions" (quotations and citations omitted)); see also McGrath v. Consol. Rail Corp., 136 F.3d 838, 840 (1998) (explaining that collateral source rule "mitigates the danger of the jury finding no liability or reducing a damage award when it learns that plaintiff's loss is entirely or partially covered" (internal quotations omitted)).

Compare <u>Parker v. Town of Swansea</u>, 310 F. Supp. 2d 356, (D. Mass. 2004) ($250,000 award in civil rights action where defendant was shot eight times not unreasonably low where it exceeded medical expenses and was rationally based on the evidence).  This court recognizes that a judge "'cannot displace a jury's verdict merely because [s]he disagrees with it or would have found otherwise in a bench trial.'" <u>Ahern v. Scholz</u>, 85 F.3d 774, 780 (1st Cir.1996) (quoting <u>Milone</u>, 847 F.2d at 37).  Similarly, this court recognizes that "the trial judge's discretion, although great, must be exercised with due regard to the rights of both parties to have questions which are fairly open resolved finally by the jury at a single trial." <u>Cofran v. Hitchcock Clinic, Inc.</u>, 683 F.2d 5, 6 (1st Cir. 1982).  Nevertheless, where, as here, the damage award bears no rational relationship to the evidence, and the end result "violate[s] the conscience of the court" and "strike[s] such a dissonant chord that justice would be denied were the judgment permitted to stand[,]" the motion for a new trial on damages must be allowed.  <u>See</u> <u>Milone</u>, 847 F.2d at 37-38 (citations omitted).

## **Liability**

The defendants argue that if this court grants a new trial on the issue of damages, it should also order a new trial on the issue of liability.  As the First Circuit has explained:

> Where a verdict is set aside because of an inadequate damages award, retrial of all the issues is required "if the verdict 'could only have been a sympathy or compromise verdict.'" *Spell v. McDaniel,* 824 F.2d 1380, 1400 (4th Cir. 1987), *cert. denied,* 484 U.S. 1027, 108 S. Ct. 752, 98 L. Ed. 2d 765 (1988) (quoting *Great Coastal Express, Inc. v. International Brotherhood of Teamsters,* 511 F.2d 839, 846 (4th Cir. 1975), *cert. denied,* 425 U.S. 975, 96 S. Ct. 2176,

48 L. Ed. 2d 799 (1976)).  "'[B]ut where there is no substantial indication that the liability and damages issues are inextricably interwoven ... a second trial limited to damages is entirely proper.'"  *Id.  See also Mekdeci [v. Merrell Nat. Labs,* 711 F.2d 1510, 1513 (11th Cir. 1983)] (retrial limited to damages not appropriate where there are indications jury may have rendered compromise verdict); *Burger King Corp. v. Mason,* 710 F.2d 1480 (11th Cir.1983), *cert. denied,* 465 U.S. 1102, 104 S. Ct. 1599, 80 L. Ed. 2d 130 (1984) (where there is a compromise finding on liability, a separate trial on damages alone will not suffice).  *See generally* C. Wright and A. Miller, *Federal Practice and Procedure: Civil,* § 2814 (1973 and Supp. 1990).

Phav, 915 F.2d at 767.

In the instant case, there is no indication of a compromise verdict, *i.e.*, that the jurors "resolve[d] their inability to make a determination with any certainty or unanimity on the issue of liability by finding inadequate damages."  Id. at 768 (quoting Mekdeci, 711 F.2d at 1513).  Here the evidence of liability was very distinct from the issue of the amount of damages.  There was ample basis for the jury to have accepted Brown's version of his conversations with the defendants including, without limitation, those reasons eloquently expressed in plaintiff's counsel's closing.  Moreover, there were no other indicia of a compromise verdict.  For example, "[t]here was no sign of difficulty in the jury proceedings[,]" the jurors' sole question was focused on the amount of damages, and there was no indication of confusion about liability issues.  See Phav, 915 F.2d at 768.  Furthermore, the answers to the special questions were not inconsistent or otherwise problematic.  "Absent any indicia other than the damages award, . . . there is no basis for finding that the verdict was the result of a compromise on liability."  Id. at 769.

Similarly, there is no evidence that the award, which was a low one, was based on sympathy.  Defendants argue that "the jury could have been sympathetic to the fact that part of the Plaintiff's medical expenses of $45,973.16 were going to be borne, in part, by him."  (Docket No. 88 at 7).  Specifically, the defendants contend that a careful analysis of the medical records <u>may</u> indicate based on certain unexplained notations that the plaintiff might be liable for two payments totaling $15,003.79.  (<u>Id.</u>).  As an initial matter, there was no evidence that the medical records actually reflect the personal obligation on which the defendants' argument is based.  Moreover, this argument does not explain the award of $16,000.00, which is not the total of these medical bills.  Finally, the comparison of these bills with the damages awarded does not indicate that the liability finding was based on anything other than the evidence relating to liability.  If anything, defendants' argument further supports the need for a new trial on the issue of damages.

## IV.  ORDER

For all the reasons detailed herein, "Plaintiff's Motion for a New Trial Solely on the Issue of Damages" (Docket No. 84) is ALLOWED, and defendants' alternative "Crossmotion for New Trial" (Docket No. 88) is DENIED.


    / s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

-11-